FILED & JUDGMENT ENTERED
David E. Weich

Apr 17 2008

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
George R. Hodges
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

In Re:                              )
                                    )    Case No. 07-30899
**WILLIAM BERNARD WHITE,**          )    Chapter 13
                                    )
         Debtor.                    )
_____)

### ORDER GRANTING DEBTOR'S MOTION TO
### MODIFY CONFIRMED CHAPTER 13 PLAN

This matter is before the court on the debtor's Motion to Modify Chapter 13 Plan to Remove Debts.  In his motion, the debtor seeks to reduce his monthly Plan payment and to shorten the term of his payments to less than sixty months.  The debtor's motion raises the issue of whether a Chapter 13 Plan that, at the outset, was required to run for 60 months may be modified after confirmation for a shorter commitment period.  In addition, the court must determine whether the debtor is bound by the calculations on Form B22C when computing the minimum payment to unsecured creditors in the context of a post-confirmation modification.  The court has concluded that 11

U.S.C. § 1329(a) permits post-confirmation modification of a Chapter 13 Plan to less than 60 months notwithstanding the provisions of § 1325(b)(1)(B) relating to the confirmed commitment period. Finally, the court finds that the debtor should consider Schedules I and J when determining disposable income in a post-confirmation modification.

<u>Statement of the Case</u>

1.   The debtor filed a Chapter 13 petition with this court on April 30, 2007.  Along with the petition, the debtor filed the Form B22C "Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income," which identified him as being an above-median income debtor. Consequently, the court confirmed the debtor's Plan with a five year applicable commitment period pursuant to 11 U.S.C. § 1325(b)(4)(A)(ii).

2.   Based on the debtor's calculations on Form B22C, he arrived at $0 in Monthly Disposable Income with which to pay unsecured creditors.  However, the debtor's original Schedule I indicated average monthly income of $3,045.92 and Schedule J reflected average monthly expenses of $2,451.67, the difference of which is $594.25.  Accordingly, the original Plan payment was projected at the rate of $580.00 per month for a term of 60 months.  In sum, the debtor's calculations on Form B22C served as the basis for determining the term of his Plan, and Schedules

2

I and J served as the basis for setting the amount of his monthly Plan payments.

    3. Subsequent to the confirmation of the debtor's Plan, several events took place that have fundamentally altered the debtor's financial situation and prompted his filing the motion to modify pursuant to 11 U.S.C. § 1329(a).  First, the debtor's automobile, for which AmeriCredit Financial Services ("AmeriCredit") held a secured claim, was declared a total loss after it was wrecked.  GMAC Insurance offered to settle the insurance claim for $9,400.  Consequently, the debtor filed a Motion to Approve Physical Damage Insurance Settlement, and the debtor entered into a consent order with AmeriCredit allowing him to purchase a substitute vehicle that was mutually acceptable to the debtor and AmeriCredit.

    4. The debtor and AmeriCredit could not agree upon a replacement vehicle, so the debtor obtained credit from a new lender, which allowed him to purchase a 2002 Ford Explorer for the price of $9,004.85 with a maximum monthly payment of $318.93.  The debtor is making these monthly payments outside of the Chapter 13 Plan.  On November 28, 2007, the court entered an Order Terminating the Automatic Stay, which allowed AmeriCredit to collect the insurance proceeds on its vehicle and served to remove AmeriCredit's secured claim from the Plan.

5. In addition to the automobile accident, On December 19, 2007, the court terminated the automatic stay on the debtor's home with respect to Chase Home Finance, LLC ("Chase") due to the debtor's failure to comply with the terms of a consent order entered into with Chase.

6. Finally, the debtor suffered a torn rotator cuff, which required surgery and caused the debtor to miss a significant amount of work.

7. As a result of these changes in circumstance, the debtor filed the motion to modify to remove the secured claims of Chase and AmeriCredit. In addition, the motion to modify seeks to reduce the debtor's monthly plan payment to $125.00 due to the removal of the above-referenced secured claims.[1] Due to the removal of the secured claims, the reduced monthly payment amount would be sufficient to pay the unsecured creditors the amount originally proposed, but in a period of only 41 months.

8. In support of the motion to modify, the debtor filed amended Schedules I and J, an Amended Summary of Schedules, and an Amended Statistical Summary of Certain Liabilities and Related Data. The Amended Schedules I and J reflect current

---

[1] The court notes that in his motion to modify, the debtor requests that his monthly plan payment be reduced to $125.00. However, in the debtor's brief in support of his motion to modify, he seeks a reduction to $150.00. Given this discrepancy, the court will order the Chapter 13 Trustee to set the monthly plan payment at an amount consistent with this Order and with the needs of the Plan.

4

average monthly income of $3,045.92 and average monthly expenses of $2,892.00, leaving a monthly net income of approximately $153.92. Despite this reduction, the debtor's income remains above the median family income for a family of one in the Western District of North Carolina.

    9. The Chapter 13 Trustee filed the following response to the debtor's motion to modify:

> The proposed modification may not comply with the requirements of 11 U.S.C. Section 1325(b)(1)(B). The debtor has only made 33 payments to the trustee and the proposed modification to $150.00 for [a] ten percent dividend would only require eight more payments. The debtor's form B22C indicates he is an above median income debtor and would be subject to an applicable commitment period of 60 months.

## Discussion

    10. The court must determine whether a post-confirmation modification pursuant to § 1329 must comply with the applicable commitment period requirement of § 1325(b)(1)(B).

    11. In addition, the debtor seeks to have the court determine whether he is bound by the results of the calculation on Form B22C, regardless of changes in actual income or expenses, when calculating the minimum payment to unsecured creditors in the context of a § 1329 post-confirmation modification.

    12. Post-confirmation modification of a Chapter 13 plan is controlled by 11 U.S.C. § 1329. Therefore, the court looks to the language of § 1329, which provides in pertinent part:

5

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
>> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>> (2) extend or reduce the time for such payments;
>> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or
>> (4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor . . . .
>
> (b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.
>> (2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.
>
> (c) A plan modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) . . . .

See 11 U.S.C. § 1329.

13. The Trustee asserts that the debtor's proposed modification under § 1329 may not comply with the requirements of § 1325(b)(1)(B) because the debtor is an above median income debtor and is, therefore, subject to an applicable commitment period of 60 months.

14. Section 1325(b)(1)(B) mandates that a debtor's plan "provide[] that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan" be

6

applied to make payments to unsecured creditors. Section 1325(b)(4) in turn defines "applicable commitment period" as three years for those debtors whose current monthly income ("CMI") is less than the applicable median family income and not less than five years for those debtors whose CMI is more than the applicable median family income. Pursuant to § 1325(b)(4)(B), the applicable commitment period may be less than 3 or 5 years if the plan provides for payment in full of all allowed unsecured claims over a shorter period. Finally, §§ 1325(b)(2) and (3) provide for how a debtor's plan payments must be computed pursuant to Form B22C and the means test.

    15.  As a starting point, the court notes that neither the pre- nor the post-Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") versions of § 1329(a) and (b) make reference to the requirements of § 1325(b). When it enacted BAPCPA, Congress did add a reference to § 1325(b) in § 1329(c), which provides that a modified plan may not require a commitment period that exceeds that specified in § 1325(b)(1)(B) unless the court, for cause, approves a longer period. But, there is no express prohibition of a modified commitment period that is <u>shorter</u> than the commitment period required by § 1325(b)(1)(B). The court also notes that BAPCPA's failure to provide such an express prohibition is in a context in which such pre-BAPCPA modifications were common.

16. Although the courts are split, a significant number of pre-BAPCPA cases determined that § 1325(b) did not apply to the post-confirmation modification of a Chapter 13 plan under § 1329. See In re Sunahara, 326 B.R. 768, 774-781 (9th Cir. BAP 2005) (summarizing cases on this issue and holding that the incorporation of § 1325(a) into § 1329(b)(1) "is not . . . the functional equivalent of an indirect incorporation of § 1325(b)"); In re Forbes, 215 B.R. 183, 191 (8th Cir. BAP 1997); In re Sounakhene, 249 B.R. 801, 805 (Bankr. S.D.Cal. 2000); In re Anderson, 153 B.R. 527, 528 (Bankr. M.D.Tenn. 1993); and In re Moss, 91 B.R. 563, 566 (Bankr. C.D.Cal. 1988). But see In re Guentert, 206 B.R. 958, 963 (Bankr. W.D.Mo. 1997); In re McKinney, 191 B.R. 866, 869 (Bankr. D.Or. 1996); and In re Solis, 172 B.R. 530, 532 (Bankr. S.D.N.Y. 1994).

17. In Sunahara, the court recognized that § 1329(b) specifically requires that post-confirmation modifications comply with certain Code sections, but § 1325(b) is not one of them. See Sunahara at 781. In that regard, the court stated that "[s]imply put, the plain language of § 1329(b) does not mandate satisfaction of the disposable income test of 1325(b)(1)(B) with respect to modified plans. Had Congress intended to impose such a requirement, it could have easily done so by making the appropriate incorporating reference. If the absence of the reference to § 1325(b) was indeed an oversight,

8

it is the province of the legislature, and not the judiciary, to make the correction." See id. (citation omitted). And, as noted above, when presented with the opportunity to add the reference to § 1325(b) in § 1329(b) with BAPCPA, Congress declined to do so.

18. Although the Fourth Circuit has not ruled on the issue of whether a post-confirmation modification pursuant to § 1329 must comply with the applicable commitment period requirement of § 1325(b)(1)(B), In re Arnold, 869 F.2d 240 (4th Cir. 1989) and In re Murphy, 474 F.3d 143 (4th Cir. 2007) offer this court some guidance with respect to post-confirmation modifications in Chapter 13 cases.

19. In Arnold, the Fourth Circuit considered whether the Bankruptcy Court abused its discretion by increasing the debtor's monthly payments from $800 to $1,500 after the debtor's post-confirmation income increased from $80,000 per year to more than $200,000 per year. The Court held that the Bankruptcy Court did not err in increasing the debtor's payments pursuant to § 1329(a) given the unanticipated and substantial change in the debtor's financial condition following confirmation of the Chapter 13 plan. See Arnold at 241. Significant to the issue before this court is the fact that in its detailed analysis of the post-confirmation modification under § 1329(a), the Fourth Circuit included no discussion of § 1325(b).

9

20. In Murphy, the Fourth Circuit strongly reaffirmed its decision in Arnold. Murphy involved two different cases in which the Chapter 13 Trustee sought to modify confirmed Chapter 13 plans to increase the amount to be paid to unsecured creditors. The Fourth Circuit combined the cases for decision and set forth the analysis bankruptcy courts should use when considering a motion for modification pursuant to §§ 1329(a)(1) or (a)(2). See Murphy, 474 F.3d at 150.

21. Specifically, the Murphy Court stated:

> [P]er In re Arnold, when a bankruptcy court is faced with a motion for modification pursuant to §§ 1329(a)(1) or (a)(2), the bankruptcy court must first determine if the debtor experienced a substantial and unanticipated change in his post-confirmation financial condition. . . . If the change in the debtor's financial condition was either insubstantial or anticipated, or both, the doctrine of *res judicata* will prevent the modification of the confirmed plan. However, if the debtor experienced both a substantial and unanticipated change in his post-confirmation financial condition, then the bankruptcy court can proceed to inquire whether the proposed modification is limited to the circumstances provided by § 1329(a). If the proposed modification meets one of the circumstances listed in § 1329(a), then the bankruptcy court can turn to the question of whether the proposed modification complies with § 1329(b)(1).

See id.

22. In its thorough analysis of post-confirmation modifications under §§ 1329(a)(1) or (a)(2), the Murphy Court never made reference to § 1325(b). Presumably it was so evident to the Fourth Circuit that § 1325(b) was not incorporated into any of the relevant provisions of § 1329, either directly or

10

indirectly, that reference to § 1325(b) was not even worthy of a footnote. In contrast, the Court went to some lengths to include in footnotes the full text of those statutory sections that it did consider relevant.

23. Finally, this court is persuaded by the reasoning stated in In re Ireland, 366 B.R. 27 (Bankr. W.D.Ark. 2007). There the issue was whether the debtors, who, like the debtor in this case, had experienced a significant reduction in post-filing income, were prohibited by the provisions of BAPCPA from modifying their Chapter 13 plan to reduce payments to unsecured creditors.

24. On Form B22C, the debtors reported a combined annual gross income of $66,499.04, which is above the median income for a family of two in Arkansas. In addition, Form B22C revealed that the debtors had disposable monthly income of $1,014.96, and the confirmed plan provided for a monthly plan payment of $1,640.00 for 60 months, which would pay unsecured creditors in full. See Ireland, 366 B.R. at 29.

25. The debtors subsequently filed an amended Schedule I evidencing a $848.99 reduction in net monthly income as a result of the male debtor's job change. See id. In addition, the debtors' filed a Fourth Modified Plan, which reduced the plan payment to $1,000.00 per month for sixty months. The debtors calculated the plan payment by subtracting the current average

monthly expenses of $2,710.00 on Schedule J from the current average monthly income of $3,710.89 on Schedule I. See id. Significantly, the debtor's current gross income of $4,247.12 per month, when multiplied by twelve, was still above the median family income for a family of two in Arkansas. Finally, pursuant to the Fourth Modified Plan, general unsecured creditors would receive a 19% rather than a 100% dividend. See id.

26. The Trustee objected to the debtors' Fourth Modified Plan because it was inconsistent with the original calculation in Form B22C that dictated a 100% dividend to unsecured creditors. See id. She argued that the debtors were bound by the result of the Form B22C calculation regardless of any post-confirmation changes in income. See id. The debtors, on the other hand, argued that their proposed post-confirmation modification was allowed pursuant to § 1329 because it was warranted by a change in circumstances. See id. Because the plan remained a 60 month plan, the term of the plan was not an issue before the bankruptcy court.

27. At the outset, the Ireland court observed that in order to avoid the preclusive effect of the principle of *res judicata*, the debtors' proposed modification must be dictated by "an unanticipated substantial change in circumstances affecting the debtors' ability to pay," and in this case the Trustee did

12

not challenge the validity of the debtors' alleged change in circumstances that prompted the post-confirmation modification. See id. at 33.

28. Ultimately the Ireland court held that the debtors should compare Schedules I and J to determine disposable income in a plan modified pursuant to § 1329 rather than being bound by the calculations of Form B22C. See id. at 34. In that regard, the court concluded the following:

> Absent a clear statutory command that 1325(b) applies to modifications under 11 U.S.C. § 1329, the Court is not inclined to adopt a tortured view of this statute in order to reach an absurd result. There is no indication that with the enactment of BAPCPA, Congress intended to repeal, by implication, the provisions of 11 U.S.C. § 1329 that give the Bankruptcy Court flexibility to deal with changed circumstances after a plan has been confirmed. Therefore, the only method left to determine disposable income/projected disposable income in a modified plan filed pursuant to 11 U.S.C. § 1329 is to compare Schedules I and J.

See id. at 34.

29. This court has concluded it should follow the reasoning in Ireland. It is consistent with the Arnold and Murphy decisions because it recognizes that the debtor must have experienced a substantial and unanticipated change in his post-confirmation financial condition in order to avoid the preclusive effect of the doctrine of *res judicata*. The Murphy decision in particular gives the parties to a bankruptcy case and the court the tools they need to deal with substantial and unanticipated changes in a debtor's circumstances that may occur

13

during the lengthy pendency of a Chapter 13 plan — both positive and negative. When a debtor's circumstances improve, the creditors should benefit from that change. On the other hand, when a debtor's circumstances deteriorate, the debtor should not be locked into unrealistic or overly burdensome requirements established by a rigid historic snapshot of past circumstance.

30. In addition, and as the <u>Ireland</u> court held, § 1329 simply does not require compliance with § 1325(b) for post-confirmation modifications. Applying those principles to this case, the court holds that the debtor's post-confirmation modifications pursuant to § 1329(a) need not comply with the requirements of § 1325(b)(1)(B) and, therefore, are not subject to a 60 month applicable commitment period as asserted by the Trustee. In addition, the debtor should compare Schedules I and J to determine disposable income in the context of a § 1329 post-confirmation modification and is not bound by the Form B22C calculations required by § 1325(b)(2) and (3).[2] The court notes

---

[2] This holding is consistent with this court's reasoning in <u>Plumb</u>, 373 B.R. 429 (Bankr. W.D.N.C. 2007), in which the issue before the court was whether § 1325(b) requires above-median income debtors to determine projected disposable income solely based on Form B22C or whether Schedules I and J should be taken into consideration in making that calculation. In <u>Plumb</u> the court held that Form B22C was the starting point for determining projected disposable income for above-median income debtors but debtors must also take Schedules I and J into consideration when making that calculation because "[t]he reality of most debtor's finances is that they are dynamic and subject to change for any number of reasons. To shoehorn that financial reality into a static Form B22C would result in many cases in a required plan

that this modification will not reduce the amount paid to the debtor's unsecured creditors pursuant to his original confirmed plan.

31. Finally, the court also notes that there are ample measures in place to protect creditors from erosion of the commitment period by post-confirmation modification. First, the debtor must have experienced a substantial and unanticipated change in circumstances to qualify for Plan modification. And, second, the debtor's Plan is always governed by the principle of good faith. Whether the requirements for modification and good faith are met is a determination that will depend on the circumstances of each case. Here, the court has concluded that the requirements are met by the debtor's change in circumstances and the fact that he remains committed to pay his creditors the same percentage of their claims as was confirmed in his original Plan of reorganization. In fact, the debtor's modified Plan will pay creditors that same percentage of their claims sooner than the original Plan would have.

32. The debtor's financial (and physical) adversity resulted in his returning a car and losing his house to foreclosure, thereby satisfying those secured creditors and removing their secured claims from this bankruptcy case. Now, if the debtor was forced to remain in his case for 60 months,

---

payment schedule that does not reflect the debtor's actual ability to pay their creditors." See Plumb at 435.

15

the dividend to unsecured creditors would be increased. In light of the debtor's adversity, it seems unfair to require him to pay more to unsecured creditors than was originally confirmed without objection by any of them. Rather, given his setbacks, it seems more appropriate to afford the debtor his fresh start at an earlier date.

It is therefore **ORDERED** that the debtor's Motion to Modify Chapter 13 Plan to Remove Debts is **GRANTED**. The Chapter 13 Trustee is directed to set the monthly plan payment at an amount consistent with this Order and with the needs of the plan.

**This Order has been signed electronically.**       United States Bankruptcy Court
**The Judge's signature and court's seal**
**appear at the top of the Order.**